ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| EX AGTE. EDWARD DAVID VÉLEZ NEGRÓN<br>RECURRENTE(S)<br><br>V.<br><br>POLICÍA DE PUERTO RICO<br>RECURRIDA(S) | KLRA202300233 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Gobierno de Puerto Rico Comisión de Investigación, Procesamiento y Apelación (CIPA)<br><br>Caso Núm.<br>**23P-63**<br><br>Sobre:<br>Expulsión |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 11 de marzo de 2024.

Comparece ante este Tribunal de Apelaciones, el señor **EDWARD DAVID VÉLEZ NEGRÓN** (señor **VÉLEZ NEGRÓN**) mediante *Revisión Judicial de Resolución Administrativa Final* entablada el 22 de mayo de 2023. En su recurso, nos interpela que revisemos la *Resolución* decretada el 23 de febrero de 2023 por la Comisión de Investigación, Procesamiento y Apelación (CIPA) del Gobierno de Puerto Rico.[1] Mediante esta determinación, la CIPA declaró no ha lugar la *Apelación* y confirmó la expulsión del señor **VÉLEZ NEGRÓN**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**– I –**

El 31 de marzo de 1995, el señor **VÉLEZ NEGRÓN** comenzó funciones en el **NPPR**.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 10 de marzo de 2023. Véase Apéndice de *Moción en Cumplimiento de Orden y en Oposición a Desestimación,* págs. 1- 2.

El día 27 de enero de 2020, al señor **VÉLEZ NEGRÓN** se le tomó una muestra de orina para realizar la prueba de detección de sustancias controladas.[2] Así las cosas, el 28 de febrero de 2020, recibió una citación para comparecer el 9 de marzo de 2020 a la oficina de Detección de Sustancias Controladas.[3] En dicha cita, se le informó el resultado de su prueba.

El 13 de marzo de 2020, el señor **VÉLEZ NEGRÓN** recibió una *Citación* para presentarse el 20 de marzo de 2020 a la División de Investigaciones Administrativas de Mayagüez.[4] En esta fecha, solicitó estar acompañado por un abogado. Ante ello, se expidió *Citación* para comparecer el 4 de mayo de 2020 que fue diligenciada el 28 de abril de 2020.[5] Finalmente, el 13 de mayo de 2020, se celebró una audiencia.[6]

Después, el 26 de junio de 2020, el Tnte. Carlos Martel Morales, Oficial Investigador, suscribió comunicación en la cual informó haber culminado la investigación de la *Querella Administrativa* por el uso indebido de sustancias controladas presentada por el Sgto. Raymar Hernández Benítez.[7] Así como, el expediente fue remitido a la Superintendencia de Responsabilidad Profesional del Cuartel General.

El 4 de agosto de 2020, el Hon. Henry Escalera Rivera, entonces Comisionado del **NPPR**, remitió una *Notificación de Suspensión Sumaria de Empleo Resolución de Cargos*.[8] En este escrito, se le suspendió sumariamente de empleo efectivo a la fecha de notificación. Ello por haber arrojado positivo y confirmado a metabolito de marihuana en una prueba de detección de sustancias

---

[2] Véase Apéndice de *Revisión Judicial de Resolución Administrativa Final*, pág. 3.
[3] *Id.*, pág. 4.
[4] *Id.*, pág. 5.
[5] *Id.*, pág. 6.
[6] *Id.*, pág. 7.
[7] *Id.*, pág. 8.
[8] *Id.*, págs. 11- 14.

controladas realizada en enero de 2020. El Comisionado, en lo pertinente, expuso:

> [L]uego de un análisis ponderado de los hechos aquí señalados, existen elementos suficientes para que usted sea suspendido de empleo (...). Al incurrir en los hechos antes mencionados, usted violó lo dispuesto en el Artículo 14, según enmendado por el Reglamento 9001 del 29 de agosto de 2017, sección 14.6.1 (A), Faltas Graves número dieciséis [16)], veinte (20), veintinueve (29); Faltas leves número uno (1) y el Artículo 5, Sección 5.2 del Reglamento 4216, "Reglamento de Personal de la Policía de Puerto Rico" del 4 de mayo de 1981, según enmendado. (...) Dicha conducta es incompatible con sus funciones como miembro de la Policía de Puerto Rico por lo cual, lo suspendo sumariamente de empleo, y me propongo expulsarlo del puesto que ocupa en el Negociado de la Policía de Puerto Rico.

Esta *Notificación de Suspensión Sumaria de Empleo Resolución de Cargos* fue diligenciada personalmente el 14 de agosto de 2020.[9] El 20 de agosto de 2020, se expidió *Citación Oficial del Querellado* en la cual se pautó audiencia para el 28 de septiembre de 2020 ante el Oficial Examinador[10].

Así pues, el 17 de febrero de 2022, el Cnel. Antonio López Figueroa, Comisionado del **NPPR**, decretó *Resolución Final de Expulsión.*[11] Específicamente, el Comisionado expuso: "[u]sted solicitó la vista administrativa tal como fue advertido y, luego de varios trámites procesales, se celebró la misma el 29 de octubre de 2020. Luego de reevaluar la investigación administrativa y conforme a la prueba que obra en el expediente se ha decidido confirmar la sanción de expulsión". La aludida *Resolución Final de Expulsión* fue notificada personalmente el 21 de abril de 2022 al señor **VÉLEZ NEGRÓN**.[12]

Consecuentemente, el 13 de mayo de 2022, el señor **VÉLEZ NEGRÓN** presentó su *Apelación* ante la Comisión de Investigación, Procesamiento y Apelación (CIPA).[13] En síntesis, planteó las razones

---

[9] Véase Apéndice de *Revisión Judicial de Resolución Administrativa Final*, pág. 15.
[10] *Id.*, pág. 49.
[11] *Id.*, págs. 19– 22.
[12] *Id.*, pág. 21.
[13] El 9 de mayo de 2022, el alegato fue remitido por correo certificado con acuse de recibo. *Id.*, págs. 23– 36.

por las cuales no debió ser expulsado. En lo pertinente, enunció que: (1) hubo dilación en el manejo de la querella presentada el 13 de mayo de 2020 y recibida la notificación de suspensión el 21 de abril de 2022; (2) el quantum de prueba obtenida para la expulsión; y (3) el *Reglamento Núm. 6403*, al momento de la presentación de la *Apelación* advertía que la obligación del médico revisor era notificar el resultado al Superintendente como negativo, ya que el resultado fue obtenido por el uso de un medicamento recetado.[14]

Ulteriormente, el 26 de enero de 2023, la CIPA dictó *Orden* en la cual concedió veinte (20) días para fijar su posición respecto a la apelación al **NPPR**.[15] De esa manera, el 16 de febrero de 2023, el **NPPR** presentó *Moción en Cumplimiento de Orden con Relación a Posición sobre la Apelación del Apelante*.[16] En esencia, el **NPPR** manifestó que el señor **VÉLEZ NEGRÓN** fue sometido a una prueba de detección de sustancias controladas y la muestra fue reportada como positivo. Añadió, que tal resultado fue confirmado por el Negociado de Ciencias Forenses y el Químico Licenciado Víctor López Hernández, Licencia #4263. Además, argumentó que el señor **VÉLEZ NEGRÓN** es un empleado enmarcado dentro de las prohibiciones que establece la *Ley Núm. 15 de 2021*, por lo cual no está protegido y rige la prohibición sobre poseer licencia para la compra y consumo de cannabis medicinal, lo cual está totalmente prohibido a los funcionarios públicos catalogados como primeros respondedores y los clasificados como "*law enforcement*".[17]

Ante ello, el 23 de febrero de 2023, la CIPA dictaminó *Resolución* en la cual declaró no ha lugar la apelación y confirmó la expulsión del señor **VÉLEZ NEGRÓN**. Inconforme con esa decisión, el 24 de marzo de 2023, el señor **VÉLEZ NEGRÓN** presentó *Solicitud de*

---

[14] Es decir, dos (2) años después de los hechos y diecinueve (19) meses después de la vista administrativa.
[15] Véase Apéndice de *Revisión Judicial de Resolución Administrativa Final*, pág. 74.
[16] *Id.*, págs. 75– 78.
[17] *Id.*, pág. 76.

*Reconsideración.*[18] El 29 de marzo de 2023, la CIPA emitió *Resolución* declarando no ha lugar a la *Reconsideración.*[19][20]

En desacuerdo, el 22 de mayo de 2023, el señor **VÉLEZ NEGRÓN** acudió ante este tribunal revisor mediante una *Revisión Judicial de Resolución Administrativa Final.* En la misma, señala el(los) siguiente(s) error(es):

> Dilación en la investigación. La toma de la muestra fue el 13 de mayo de 2020 y la notificación de suspensión fue emitida el 21 de abril de 2022, transcurriendo en exceso el término de 180 días que tiene la agencia para este proceso.

> La PPR actuó en contra de su mismo Reglamento 6403 sobre Programa para la Detección de Sustancias Controladas en los Funcionarios y Empleados de la Policía de Puerto Rico, al determinar un positivo a sustancias controladas, cuando su reglamento indica que si el mismo es por causa de medicamentos el resultado deberá ser notificado como negativo.

> Erró la Policía de Puerto Rico al expulsar a un agente con 29 años de servicio, solo por el único hecho de la utilización de cannabis medicinal, el cual, no se encontraba tipificado en la misma agencia como una falta para expulsión.

El 25 de mayo de 2023, este foro intermedio emitió *Resolución* concediendo un término de treinta (30) días para que presentara su alegato en oposición al recurso al **NPPR.** Así, el 29 de junio de 2023, el **NPPR** presentó su *Solicitud de Desestimación.* Fundamentado en que el señor **VÉLEZ NEGRÓN** incumplió con lo instituido en el Reglamento del Tribunal de Apelaciones al no incluir copia de la determinación de la cual recurre y su solicitud de reconsideración en el apéndice de su recurso de revisión judicial.

El 5 de julio de 2023, intimamos *Resolución* en la cual se le requirió al señor **VÉLEZ NEGRÓN** exponer su posición sobre la moción de desestimación dentro de un plazo perentorio de quince (15) días.

A tales efectos, el 24 de julio de 2023, el señor **VÉLEZ NEGRÓN** presentó su *Moción en Cumplimiento de Orden y en Oposición a*

---

[18] *Id.*, págs. 3– 6.
[19] El referido dictamen fue archivado en autos el 21 de abril de 2023. Véase Apéndice de *Revisión Judicial de Resolución Administrativa Final,* págs. 1- 2.

*Desestimación* e incluyó los escritos medulares que originalmente no formaron parte del apéndice de su recurso.

Evaluado concienzudamente el expediente del caso; y contando con el beneficio de la comparecencia de ambas partes; nos encontramos en posición de resolver. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

**– II –**

**– A –**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[21] Su sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[22]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[23] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la razonabilidad de la actuación de la agencia.[24] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[25]

No obstante, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran

---

[21] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta,* 201 DPR 615, 621 (2018).
[22] 3 LPRA § 9671.
[23] *Torres v. Junta Ingenieros,* 161 DPR 696, 707 (2004). Véase, además Javier A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* Ediciones Situm (2017), págs. 304 – 306.
[24] *Fonte Elizondo v. F & R Const.,* 196 DPR 353 (2016); *Otero v. Toyota,* 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.
[25] *Pérez López v. Depto. Corrección,* 208 DPR 656, 660 (2022).

consideración y respeto.[26] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[27]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[28] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[29]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[30] La *evidencia sustancial* es aquella relevante que una

---

[26] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[27] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[28] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).
[29] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[30] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

mente razonable puede aceptar como adecuada para sostener una conclusión.[31] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[32] Es decir, estas determinaciones serán respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas.[33] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su *consideración*".[34] A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[35] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[36]

De otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[37] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[38]

---

[31] *Otero v. Toyota, supra*, pág. 728.
[32] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[33] *Graciani Rodríguez v. Garage Isla Verde, supra*, pág. 128.
[34] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[35] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[36] *Id.*
[37] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[38] *Pacheco v. Estancias, supra.*

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[39] A *contrario sensu,* los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial,* o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[40]

**– B –**

La *Ley Núm. 78* de 14 de agosto de 1997, según enmendada, conocida como la *Ley para Reglamentar las Pruebas para la Detección de Sustancias Controladas en el Empleo en el Sector Público* adoptó medidas necesarias para prevenir los efectos adversos del uso de sustancias controladas en el área de empleo en el sector público.[41] Como parte de esta iniciativa, se reglamentó para establecer programas para la administración de pruebas de sustancias controladas.

Su Artículo 14 (b) decreta:

"[n]o se podrá despedir o destituir a un funcionario o empleado del puesto o cargo que ocupa por arrojar un resultado positivo corroborado en la prueba inicial para la detección de sustancias controladas. No obstante, a modo de excepción, se podrá despedir o destituir al funcionario o empleado:
1) Cuando por la propia naturaleza del empleo, la condición detectada resulte irremediablemente incompatible con el desempeño efectivo de las funciones y deberes del puesto o cargo. Se declara irremediablemente incompatible con el uso de sustancias controladas, todo puesto o cargo en cualesquiera de las Agencias y Programas de Seguridad Pública".[42]

---

[39] *García Reyes v. Cruz Auto Corp., supra,* pág. 893.
[40] *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009).
[41] Véase Exposición de Motivos, Ley Núm. 78 de 1997, según enmendada.
[42] El Articulo 4 (c) define : "Agencias y Programas de Seguridad Pública" son el Departamento de Justicia, el Negociado de Investigaciones Especiales, la Policía de Puerto Rico, la Comisión de Seguridad Pública, la Guardia Nacional de Puerto Rico, el Cuerpo de Bomberos, la Defensa Civil de Puerto Rico, el Cuerpo de Seguridad Escolar, el Cuerpo de Emergencias Médicas, la Administración de Corrección, el Programa de Salud Correccional del Departamento de Salud y los guardias de seguridad de las empresas privadas contratados por la Administración de Corrección para prestar servicios de custodia en instituciones penales, la Administración de Instituciones Juveniles, la Junta de Libertad Bajo Palabra, la Oficina de Servicios con Antelación al Juicio, la Corporación de Empresas de Adiestramiento y Trabajo, el Instituto de Ciencias Forenses, el Cuerpo de Vigilantes del Departamento de Recursos Naturales y la Administración de Servicios de Salud Mental y Contra la Adicción.

El 8 de marzo de 2002, se aprobó el *Reglamento Núm. 6403, Reglamento del Programa para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Policía de Puerto Rico.* Dicho *Reglamento* instauró las normas que regirán el programa de pruebas para la detección de sustancias controladas en los funcionarios y empleados de la Policía de Puerto Rico.[43]

Asimismo, persiguió una política pública de contribuir a erradicar el grave problema del uso ilegal de sustancias controladas en Puerto Rico.[44] Los Artículos 9 al 11 del mencionado *Reglamento 6403* determinan como y cuando se administrará el programa para la detección de sustancias controladas. Así pues, el Artículo 11 del mencionado *Reglamento* dispone "[s]e administrarán pruebas periódicas para la detección de sustancias controladas a todos los funcionarios y empleados de la Policía de Puerto Rico, por lo menos una vez al año; pero no más de dos veces al año".[45]

El Artículo 16 del referido *Reglamento* determina expresamente la incompatibilidad del uso de sustancias controladas con todo puesto o cargo en el **NPPR**. El precitado Artículo expresa:

(A) Se declara irremediablemente incompatible con el uso de Sustancias Controladas, todo puesto o cargo en la Policía de Puerto Rico como Agencias de Seguridad Pública.

(B) En todos los casos en que se dispongan tomar medidas disciplinarias, se cumplirá con las garantías procesales mínimas de notificación y vista informal administrativa, para darle al funcionario o empleado la oportunidad de ser oído, presentar evidencia a su favor e impugnar la evidencia presentada en su contra. Dicha vista deberá realizarse no más tarde de veinte (20) días a partir de la notificación de la medida disciplinaria impuesta.

**-C-**

La Ley Núm. 20 de 2017, conocida como la *Ley del Departamento de Seguridad Pública de Puerto Rico,* persigue proveer un sistema de seguridad más efectivo, eficiente, funcional y que

---

[43] Art. 4 del *Reglamento Núm. 6403.*
[44] *Id.*, Art. 5.
[45] Id.,

trabaje de forma integrada entre sus componentes y otras agencias del Gobierno de Puerto Rico.[46] Conforme al Artículo 2.20 de la precitada *Ley*, el Comisionado del Negociado de la Policía (Comisionado) tiene autoridad para suspender sumariamente de empleo al personal que supervisa. En específico, el aludido Artículo enuncia:[47]

> El Comisionado tendrá autoridad para suspender sumariamente de empleo a cualquier miembro del Negociado de la Policía de Puerto Rico cuando la conducta del miembro de Policía de Puerto Rico consista en el uso ilegal de fondos públicos, si es que aún no se le ha determinado causa para arresto o acusación por un delito grave, o cuando exista base razonable para creer que este constituye un peligro real y significativo para la salud, vida o moral de los empleados o la ciudadanía. En tales casos, el Comisionado hará que se formulen los correspondientes cargos administrativos, los cuales investigará y resolverá a la brevedad posible, imponiendo la acción disciplinaria que estime razonable o disponiendo que vuelva al servicio dicha persona si a su juicio los hechos lo justificaren.

Ello implica, que evidentemente, cuando existen elementos suficientes para suspender a cualquier miembro del **NEGOCIADO DE LA POLICÍA DE PUERTO RICO** (**NPPR**), este estará inhabilitado para ejercer sus funciones. Además, quedará relevado del disfrute de los derechos y privilegios que por ley se conceden a los policías mientras dure la suspensión.

En el caso de marras, el Comisionado entendió que el señor **VÉLEZ NEGRÓN** infringió el Artículo 14 del *Reglamento 9001* de 29 de agosto de 2017, Sección 14.6.1. Específicamente, las faltas graves número (18), (20) y (29). Además, el Comisionado concluyó que violentó el Artículo 5, Sección 2 del *Reglamento Núm. 4216, Reglamento de Personal de la Policía de Puerto Rico* de 4 de mayo de 1981, según enmendado.

En esencia, la subsección 14.6.1. del *Reglamento 9001* clasifica las faltas graves y leves a las que se exponen los miembros

---

[46] Véase Exposición de Motivos, Ley Núm. 20 de 2017, según enmendada. 25 LPRA sec. 3501.
[47] 25 LPRA sec. 3550.

de la Policía de Puerto Rico cuando se alejan de las acciones disciplinarias uniformes y razonables.

> Falta Grave Número 18: Desacatar y desobedecer órdenes legales comunicadas en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar actos de insubordinación o indisciplina. Para efectos de esta falta se entenderá como superior aquel de mayor rango o por la posición designada.
> Esta falta administrativa conlleva cuarenta (40) días de suspensión cuando sea primera sanción; setenta (70) días cuando sea la segunda sanción; y ciento veinte (120) días cuando sea por tercera sanción.

> Falta Grave Número 20: Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa.
> Esta falta administrativa conlleva la expulsión.

> Falta Grave Número 29: Incurrir en conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.
> Esta falta administrativa conlleva cuarenta (40) días de suspensión cuando sea primera sanción; setenta (70) días cuando sea la segunda sanción; y ciento veinte (120) días cuando sea por tercera sanción.

> Falta Leve Número 1: Demostrar ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.

**-D-**

El 29 de julio de 2021, fue aprobada la *Ley Núm. 15 de 2021* cuyo objetivo fue enmendar la *Ley Núm. 42 de 2017*, conocida como la *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, Ley Medicinal.*[48] Las enmiendas tuvieron el propósito de erigir protecciones de empleo para pacientes registrados y autorizados de cannabis medicinal.[49] A esos efectos, la *Ley Núm. 15 de 2021*, preceptúa que los pacientes registrados que se identifiquen ante un patrono como autorizados para el consumo de cannabis medicinal, serán considerados como una categoría protegida para propósito de las leyes de protección de empleo. Además, prescribe que ningún patrono podrá discriminar contra una persona que sea paciente

---

[48] 24 LPRA sec. 2621.
[49] El cannabis se define como una sustancia que está incluida en la Clasificación I del *Controlled Substances Act* (CSA). Véase 21 USC sec. 812 (b) (1). Bajo ese estatuto federal, el cannabis no tiene ningún uso médico aceptado. Empero, cerca de un 90% de los estados, Puerto Rico y Washington DC, permiten el uso medicinal del cannabis. Véase *Exposición de Motivos*, Ley Núm. 15 de 2021.

debidamente registrado y autorizado para utilizar cannabis medicinal. Tales protecciones aplican al reclutamiento, contratación, nombramiento, terminación o la imposición de cualquier condición de penalización en el empleo.

Ahora bien, las protecciones de esta *Ley* no serán de aplicabilidad a personas pacientes registradas y autorizadas para cannabis medicinal cuando el patrono logre establecer, mediante preponderancia de prueba, cualquiera de las siguientes condiciones:[50] (1) la utilización de cannabis medicinal represente una amenaza real de daño o peligro para las personas o propiedad; (2) la utilización de cannabis medicinal por el paciente registrado y autorizado interfiere con su desempeño y funciones esenciales de trabajo; (3) la utilización de cannabis medicinal por el paciente registrado y autorizado expone al patrono a la pérdida de alguna licencia, permiso o certificación relacionada con alguna ley, reglamentación, programa o fondo federal, y (4) el paciente registrado y autorizado ingiera o posea cannabis medicinal en su lugar de trabajo y/o durante horas laborales sin autorización por escrito del patrono.

– **III** –

Como regla general, los escritos de revisión de las decisiones administrativas serán presentados con un apéndice completo conteniendo las copias de todos los documentos que formaron parte del expediente administrativo.[51] El escrito presentado ante este foro revisor no incluyó dos (2) documentos fundamentales que colocaban a este tribunal en posición de resolver. No obstante, al momento en que el señor **VÉLEZ NEGRÓN** presentó su *Moción en Cumplimiento de Orden y en Oposición a Desestimación* acompañó ambos documentos. Por ello, al amparo de la Regla 59 (E) (2) del Reglamento

---

[50] *Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites*, Art. 24 de la *Ley Núm. 42 de 2017*, según enmendada, la *Ley Núm. 15 de 2021* añadió este nuevo Art. 24.
[51] 4 LPRA Ap. XXII – B, R. 74 (B).

del Tribunal de Apelaciones este foro intermedio *motu proprio* ha determinado evaluar el recurso.[52]

El señor **Vélez Negrón** planteó como primer señalamiento de error la dilación en la investigación por parte del **NPPR**. Para fundamentar su posición, citó el caso de *Pueblo v. Barahona Gaitán*.[53] En ese caso, nuestro Máximo Foro dictaminó que "las agencias administrativas no pueden actuar más allá de lo que les fue delegado, de manera que toda actuación administrativa que no obedezca el poder que le fue conferido mediante legislación debe catalogarse como ultra vires, y por ende nula". Además, manifestó que la acción tomada por el **NPPR** al imponerle sanciones, rebasa la autoridad en ley e incide en el debido proceso de ley que la misma agencia promulga continuamente.

Al justipreciar la *Resolución Final de Expulsión* al amparo de la *Ley Núm. 42 de 2017* y su más reciente enmienda mediante la *Ley Núm. 15 de 2021*, la cual incorpora las protecciones en el empleo a pacientes debidamente registrados y autorizados, es notable que el cargo de policía o agente de orden público resulta incompatible con el propio lenguaje e interpretación del estatuto. Al analizar el apéndice es forzoso concluir que el **NPPR** cumplió con el programa para la detección de sustancias controladas, por lo que, se rigió por lo expresamente establecido mediante su *Reglamento*. No hallamos criterio alguno que violentara el debido proceso de ley. El señor **Vélez Negrón** fue debidamente notificado, citado y escuchado en una vista administrativa.

---

[52] 4 LPRA Ap. XXII – B, R. 59 (E) (2).
   **Regla 59 — Contenido del recurso de revisión**:
   El escrito de revisión contendrá:
   (E) Apéndice:
   (2) El tribunal podrá permitir, a petición del recurrente en el recurso, en moción o *motu proprio*, a la parte recurrente la presentación de los documentos a que se refiere el subinciso (1) con posterioridad a la fecha de presentación del recurso de revisión, dentro de un término de quince días contado a partir de la fecha de notificación de la resolución del tribunal que autoriza los documentos. La omisión de incluir los documentos del Apéndice no será causa de desestimación del recurso.
[53] 201 DPR 567, 575 – 576 (2018).

El segundo y tercer señalamiento de error presentados serán discutidos en conjunto por estar estrechamente relacionados. El señor **VÉLEZ NEGRÓN** expuso que el **NPPR** actuó en contra del *Reglamento Núm. 6403* y fue expulsado por el único hecho de haber utilizado cannabis medicinal. Aflora de la *Ley Núm. 78* de 14 de agosto de 1997, según enmendada, y el *Reglamento 9001,* la incompatibilidad del cargo de policía o agente de orden público con el uso de sustancias controladas. Adicionalmente, surge que la administración de pruebas para la detección de sustancias controladas se hará de forma periódica para todos los funcionarios y empleados del Negociado de la Policía de Puerto Rico, al menos una (1) vez al año.

Asimismo, el señor **VÉLEZ NEGRÓN** presentó como evidencia la autorización y posteriores renovaciones del Departamento de Salud como paciente de cannabis medicinal. Argumentó que para el 13 de julio de 2018, obtuvo la identificación de paciente cannabis medicinal.[54]

Ahora bien, tal y como expusimos anteriormente, la *Ley Núm. 42 de 2017* fue enmendada por la *Ley Núm. 15 de 2021* para efectos de establecer protecciones de empleo para pacientes registrados y autorizados de cannabis medicinal. Con ello, el Gobierno de Puerto Rico estableció una política pública cuyo propósito es viabilizar el uso de cannabis medicinal como una alternativa de tratamiento legítima para pacientes con ciertas condiciones médicas.[55]

Pese a ello, el propio estatuto implanta expresamente que estas protecciones no serán aplicables a personas pacientes registrados y autorizados de cannabis medicinal cuando el patrono logre establecer, mediante preponderancia de prueba, cualquiera de las mencionadas condiciones. Entre estas: **(2) la utilización de**

---

[54] Véase índice de anejos de *Revisión Judicial,* págs. 55 – 63.
[55] *Pellot Arce v. Infosys BPM Limited Corp.*, 2023 TSPR 41, 210 DPR _____

**cannabis medicinal por el paciente registrado y autorizado interfiere con su desempeño y funciones esenciales de trabajo**.

Tras un concienzudo análisis de la totalidad del expediente, no hallamos indicador alguno que vislumbre que la CIPA hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción. Contrario a ello, notamos que del expediente apelativo emana la existencia de suficientes elementos que nos llevan a concluir que la decisión administrativa está sustentada y/o avalada por *evidencia sustancial.*

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar la determinación recurrida. Además, de la *Revisión Judicial de Resolución Administrativa Final* incoada tampoco se desprende alguna otra prueba para rebatir la presunción de corrección que cobija el dictamen administrativo. Cónsono con lo anterior, somos del criterio de que la *Resolución* decretada por la CIPA fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo por su *expertise*; y nos abstenemos de intervenir.

**– IV –**

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución* pronunciada el 23 de febrero de 2023 por la Comisión de Investigación, Procesamiento y Apelación (CIPA).

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones